T.C. Memo. 2006-22

UNITED STATES TAX COURT

TERESA J. FOX, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8340-03.                    Filed February 13, 2006.

Teresa J. Fox, pro se.

<u>Robert V. Boeshaar</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>:  Respondent determined petitioner is not
entitled to relief from joint and several liability under section

6015[1] for petitioner's taxable year 2000.  We sustain

respondent's determination.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

A.    Petitioner and Her Former Husband

Petitioner resided in Bremerton, Washington, when she filed

her petition.  Petitioner married Timothy Shattun (Mr. Shattun)

in May 1997.  Petitioner and Mr. Shattun separated on July 4,

2001, and were divorced on April 22, 2003.

Petitioner graduated from high school and has taken some

junior college courses.  Petitioner was 42 years old at the time

of trial.  During 2000, petitioner earned $32,194 as an

administrator at the Kitsap County Fire Marshal's Office in

Kitsap County, Washington.  At the time of trial, petitioner

worked in that department as a program specialist and fire

inspector trainee.  She has worked in that department for 11

years.

Mr. Shattun graduated from high school and worked as an

automotive technician.  During 2000, Mr. Shattun received a

distribution of $21,992 from his section 401(k) retirement plan,

Golden Touch Inc. Profit Sharing Plan.  On January 17, 2001, Mr.

Shattun was arrested by the Bremerton Police Department for

---

[1] Unless otherwise specified, section references are to the Internal Revenue Code as amended.  Rule references are to the Tax Court Rules of Practice and Procedure.

assaulting petitioner. Mr. Shattun filed for bankruptcy under chapter 13 on a date not stated in the record and listed the tax deficiency for 2000 as one of his debts.

B.  Petitioner and Mr. Shattun's Tax Return for 2000 and Petitioner's Tax Returns for 2002 and 2003

Petitioner and Mr. Shattun worked together to prepare their 2000 joint Form 1040, U.S. Individual Income Tax Return, which they filed on February 11, 2001. They used a well-known brand of tax preparation software. They reported a distribution of $21,992 from Mr. Shattun's section 401(k) retirement plan on line 16a of that return. They reported a taxable amount of $2,199 on line 16b. Petitioner and Mr. Shattun signed the return electronically.

Petitioner and Mr. Shattun reported a tax liability of $5,446 and payments of $11,285, and requested a refund of $5,839. Respondent determined a deficiency of $6,884 for petitioner and Mr. Shattun resulting from the section 401(k) retirement plan distribution. Respondent also determined that petitioner and Mr. Shattun are liable for an accuracy-related penalty of $1,377. If petitioner does not qualify for relief under section 6015(f), she will remain liable for tax and penalties totaling $8,261 and related interest.

Petitioner filed her 2002 and 2003 Federal income tax returns untimely in August or September 2004. She did not timely pay tax totaling about $5,000 for those years. Petitioner agreed

with the Internal Revenue Service in the fall of 2004 to pay $83 per month for those years, and she has abided by that agreement.

C.    Petitioner's Finances

Petitioner's expenses approximated her income in 2004 and 2005.  At the time of trial, petitioner's 19-year-old son from a prior relationship lived with her and attended college. Petitioner gives her son significant financial support.

D.    Petitioner's Application for Relief From Joint Tax Liability

On September 30, 2004, petitioner sent to respondent a Form 8857, Request for Innocent Spouse Relief, which respondent denied.[2]  Petitioner concedes the underlying tax liability, but contends that she is entitled to relief from joint liability under section 6015(f).

OPINION

A.    Petitioner's Contentions and Background

Petitioner contends that she qualifies under section 6015(f) for relief from joint liability for tax.  This Court has jurisdiction to decide whether a taxpayer is entitled to relief from joint liability under section 6015(f).  Sec. 6015(e); Ewing v. Commissioner, 118 T.C. 494, 497-507 (2002), on appeal (9th Cir., June 16, 2004), cross-appeal (9th Cir., July 19, 2004).

---

[2]  By leave of another Division of this Court, petitioner raised her claim under sec. 6015 as an affirmative defense in the deficiency proceedings.

A taxpayer qualifies for relief under section 6015(f) if relief is not available under section 6015(b) or (c) and, in light of the facts and circumstances, it is inequitable to hold the taxpayer liable for the tax or deficiency.  Petitioner concedes that she does not qualify for relief under section 6015(b) or (c) but contends she qualifies for relief under section 6015(f).

To prevail under section 6015(f), petitioner must show that respondent's denial of relief from joint liability was an abuse of discretion.  See Rule 142(a);[3] Alt v. Commissioner, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004); Jonson v. Commissioner, 118 T.C. 106, 125 (2002), affd. 353 F.3d 1181 (10th Cir. 2003); Butler v. Commissioner, 114 T.C. 276, 289-290 (2000).  Our determination under section 6015(e) relating to petitioner's eligibility for relief under section 6015(f) is made pursuant to a trial de novo and is not limited to matter submitted by petitioner before respondent determined whether she was eligible for relief.  Ewing v. Commissioner, 122 T.C. 32, 39 (2004), on appeal (9th Cir., June 16, 2004), cross-appeal (9th Cir., July 19, 2004).

---

[3]  Petitioner does not allege that respondent bears the burden of proof under sec. 7491(a).

The Commissioner will not grant relief unless the taxpayer meets seven threshold conditions:[4]  (1) The requesting spouse filed a joint return for the taxable year for which she seeks relief; (2) relief is not available to the requesting spouse under section 6015(b) or (c); (3) the requesting spouse applies for relief no later than 2 years after the date of the Service's first collection activity; (4) no assets were transferred between the spouses as part of a fraudulent scheme; (5) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse; (6) the requesting spouse did not file or fail to file the return with fraudulent intent; and (7) the income tax liability from which the requesting spouse seeks relief is attributable to an item of the individual with whom the requesting spouse filed the joint return.  Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. 296, 297.  Respondent concedes that petitioner meets these conditions.

Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298, lists several factors the Commissioner considers in determining whether a requesting spouse is eligible for relief under section 6015(f) and states that no single factor determines whether a taxpayer qualifies for relief.  All relevant facts and circumstances are to be considered.  Sec. 6015(f)(1); Rev. Proc. 2003-61, sec.

_____

[4]  Rev. Proc. 2003-61, 2003-2 C.B. 296, applies here because petitioner requested relief under sec. 6015(f) after Nov. 1, 2003; i.e., on Sept. 30, 2004.  Id. sec. 7, 2003-2 C.B. at 299.

4.03, 2003-2 C.B. at 298. We next consider the factors listed in Rev. Proc. 2003-61, sec. 4.03.

B. Factors in Rev. Proc. 2003-61, Sec. 4.03

1. Whether the Requesting Spouse Is Separated or Divorced From the Nonrequesting Spouse

Petitioner's divorce from Mr. Shattun became final on April 22, 2003. This factor favors petitioner.

2. Whether the Requesting Spouse Would Suffer Economic Hardship If Relief Were Not Granted

The Commissioner considers whether payment of tax would cause economic hardship by applying section 301.6343-1(b)(4)(i) and (ii), Proced. & Admin. Regs., which pertains to levy on a taxpayer's property. Generally, the Commissioner considers economic hardship to be present if payment of tax would prevent the taxpayer from paying his or her reasonable basic living expenses. Id.

Under the regulation, the Commissioner considers any information provided by the taxpayer in determining a reasonable amount for basic living expenses, including the following: (a) The taxpayer's age, employment status and history, ability to earn, number of dependents, and status as a dependent of someone else; (b) the amount reasonably necessary for food, clothing, housing, medical expenses, transportation, current tax payments or other court-ordered payments; (c) the cost of living in the geographic area in which the taxpayer resides; (d) the amount of

property exempt from levy which is available to pay the taxpayer's expenses; (e) any extraordinary circumstances such as special education expenses, a medical catastrophe, or a natural disaster; and (f) any other factor that the taxpayer claims bears on economic hardship and brings to the Commissioner's attention. Id.

The parties dispute whether payment of the tax at issue would be an economic hardship for petitioner.  Petitioner estimated the monthly amounts of several necessary living expenses listed in section 301.6343-1(b)(4)(ii), Proced. & Admin. Regs., e.g., $400 for food, $120 for gasoline, and $10 for clothing.  According to her estimates, her expenses equaled or exceeded her income.  However, it does not appear that petitioner always incurred the amounts of expenses she listed.  For example, she testified that she spent the amounts indicated for gasoline and clothing if she could afford to spend that much.  Thus, we think petitioner overstated her monthly expenses somewhat.

Petitioner was 42 years old at the time of trial and apparently she will be able to be employed for many more years. If relief is not granted, petitioner will remain liable for paying $8,261 plus related interest.  We conclude that this factor is neutral.[5]

---

[5]  Respondent contends, in effect, that petitioner's expenses for her son were not reasonable basic living expenses.
(continued...)

3.   Whether the Requesting Spouse Knew or Had Reason To Know of the Item Giving Rise to the Deficiency

Petitioner contends that this factor does not favor respondent because she believed that she and Mr. Shattun properly reported the $21,992 distribution using a well-known computer software program.  We disagree.

In the case of an income tax liability resulting from a deficiency, the Commissioner is less likely to grant relief under section 6015(f) if the requesting spouse knew or had reason to know of the item giving rise to the deficiency.  Rev. Proc. 2003-61, sec. 4.03(2)(a)(iii).  Actual knowledge of the item giving rise to the deficiency is a strong factor weighing against relief.  Id.  Petitioner had actual knowledge of the $21,992 distribution which generated the tax liability, and she completed the Form 1040 on which she and Mr. Shattun reported the distribution.

Petitioner testified that she and Mr. Shattun relied on the computer software program and her interpretation of sources about tax that she used.  The question is whether petitioner had knowledge of the transaction, not whether she had knowledge of its tax consequences.  See Bokum v. Commissioner, 992 F.2d 1132, 1134 (11th Cir. 1993) (knowledge contemplated by section 6013(e)

---

We conclude that this factor is neutral whether or not her support for her son is a reasonable basic living expense.

is not knowledge of the tax consequences of a transaction but of the transaction itself), affg. 94 T.C. 126 (1990); Cheshire v. Commissioner, 115 T.C. 183, 197 (2000) (knowledge of her husband's pension withdrawal was actual knowledge for purposes of section 6015 relief even though the taxpayer did not know how the withdrawal was taxed), affd. 282 F.3d 326 (5th Cir. 2002); Purcell v. Commissioner, 86 T.C. 228, 237- 238 (1986), affd. 826 F.2d 470 (6th Cir. 1987).  The item giving rise to the deficiency was the $21,992 distribution made from Mr. Shattun's section 401(k) account.  This factor strongly favors respondent.

4.   Whether the Nonrequesting Spouse Has a Legal Obligation To Pay the Taxes Due Pursuant to a Divorce Decree

Petitioner and Mr. Shattun's divorce decree is silent on their Federal income tax liability.  This factor is neutral.  See Washington v. Commissioner, 120 T.C. 137, 149 (2003); Magee v. Commissioner, T.C. Memo. 2005-263; Ellison v. Commissioner, T.C. Memo. 2004-57 n.12.

5.   Whether the Requesting Spouse Received a Significant Benefit Beyond Normal Support From the Item Giving Rise to the Deficiency

Petitioner contended at the administrative stage and at trial that Mr. Shattun received all of the benefit from the $21,992 distribution and the refund.  Mr. Shattun did not testify, but he contended at the administrative stage that petitioner benefited from the $21,992 and the refund.

The item giving rise to the deficiency was a $21,992 withdrawal from Mr. Shattun's section 401(k) plan retirement account. Petitioner and Mr. Shattun received a $5,839 refund for the 2000 tax year. Petitioner testified that the distribution and refund went into Mr. Shattun's bank account, and that he used the money to pay for a Jeep, stereo equipment, furniture, and his personal bills.

In a statement he filed during the administrative proceeding, Mr. Shattun stated that the 401(k) plan distribution helped to pay for their home, petitioner's outstanding debts, and petitioner's truck. Either of their statements could reasonably be true.

Petitioner offered no evidence corroborating her claim. On this record, we find that Mr. Shattun did not receive the sole benefit from the section 401(k) plan distribution and tax refund. This factor is neutral.

6. <u>Whether the Requesting Spouse Made a Good Faith Effort To Comply With Income Tax Laws in Subsequent Tax Years</u>

Petitioner contends that she is making a good faith effort to comply with the income tax laws. We disagree. Petitioner did not timely file her 2002 and 2003 individual income tax returns or timely pay her tax for those years. She filed these returns in August or September 2004. She offered no reason for late filing. This factor favors respondent.

7. <u>Abuse of the Requesting Spouse by the Nonrequesting Spouse</u>

There are additional factors that the Commissioner treats as favoring equitable relief if present, but not as grounds for denying relief if not present. Rev. Proc. 2003-61, sec. 4.03(2)(b)(i) and (ii), 2003-2 C.B. at 299. One of those factors is abuse of the requesting spouse by the nonrequesting spouse.

In her Form 8857, petitioner stated that Mr. Shattun assaulted her, and she said that was why they were divorced. Her testimony is corroborated by the January 2001 Bremerton Police incident report. This factor favors petitioner.

8. <u>Requesting Spouse's Mental or Physical Health</u>

The taxpayer's mental or physical health, if poor when the tax return was signed or when relief was requested, is a factor the Commissioner treats as favoring the taxpayer if present, but neutral if not present. Rev. Proc. 2003-61, sec. 4.03(2)(b)(ii). In petitioner's Form 12510, Questionnaire for Requesting Spouse, she stated that she suffered from mental abuse when she signed the return or requested relief. She did not elaborate or testify on this point. We have previously found that the abuse factor favors relief for petitioner. We conclude that this factor is neutral.

C. <u>Conclusion</u>

Factors favoring petitioner are that she and Mr. Shattun are divorced and that she suffered from abuse. Neutral factors are

economic hardship, the question of benefit from the underpayment and refund, the absence of a legal obligation of Mr. Shattun to pay the tax, and petitioner's mental condition.  The factors weighing against relief are petitioner's actual knowledge of the item giving rise to the deficiency and her unexplained failure to timely file tax returns for 2002 and 2003.  On this record we conclude that respondent's denial of equitable relief for petitioner from joint Federal income tax liability for 2000 under section 6015(f) was not an abuse of discretion.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.