T.C. Summary Opinion 2008-33


UNITED STATES TAX COURT


DEBRA E. BISHOP, Petitioner,
AND DAVID L. BISHOP, Intervenor <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 7595-06S.            Filed March 31, 2008.


<u>Barbara Lamar</u>, for petitioner.

David L. Bishop, pro se.

<u>Daniel N. Price</u>, for respondent.


    DAWSON, <u>Judge</u>:  This case was heard pursuant to section 7463
of the Internal Revenue Code in effect when the petition was
filed.[1]  Pursuant to section 7463(b) the decision to be entered

---

    [1]Unless otherwise indicated, subsequent section references
are to the Internal Revenue Code, and all Rule references are to
the Tax Court Rules of Practice and Procedure.

is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

This case arises from a request for relief from joint and several liability under section 6015(f) with respect to petitioner's unpaid joint Federal income tax liabilities for 2000, 2001, and 2002. Respondent initially determined that petitioner was not entitled to relief from joint and several liability under section 6015(f). Petitioner timely filed a petition seeking review of respondent's determination. In a postpetition and pretrial review of respondent's initial determination by the Austin, Texas, Appeals Office, reversing the prior review by the Memphis, Tennessee, Appeals Office, it was concluded that petitioner is entitled to relief. When the case was called for trial, respondent's counsel stated that petitioner and respondent both agreed that "petitioner is entitled to relief." However, David L. Bishop (intervenor) objected and would not consent to signing the decision document. Thus we must decide, on the basis of the testimony and documentary evidence in this record, whether petitioner is entitled to relief under section 6015(f) for the years involved.

## Background

At the time the petition was filed, petitioner resided in Texas.

On July 27, 2007, petitioner and respondent filed a joint motion, pursuant to Rule 91(f), for intervenor to show cause why the facts and evidence set forth in a proposed stipulation of facts, together with attached exhibits, should not be accepted as established for the purposes of this case. Intervenor filed a response to the order to show cause, primarily on the ground that he was not solely responsible for the unpaid taxes and that petitioner should pay her share. At the trial the Court's order to show cause was made absolute in that the facts and evidence set forth in the proposed stipulation of facts were deemed to be established for the purposes of this case, and most of the exhibits were received into evidence and made a part of the record.

Petitioner and intervenor were married in 1982. They continued to be married in 2000, 2001, and 2002. They separated in 2003 and were divorced on January 9, 2004. They had two minor children, a daughter and son, who were their dependents in 2000, 2001, and 2002.

Petitioner has a high school education. During the years at issue, she was employed as a claims processor for a health insurance company. Intervenor has a college degree in accounting, and during the years at issue worked as an auditor for the Texas Workforce Commission. He now performs auditing services as a consultant on an hourly subcontract basis. He was

previously a revenue agent who conducted income tax audits for the Internal Revenue Service (IRS). In 1994, intervenor was indicted for bribing a public official in 1992 and 1993. He pled guilty to the charges. On January 6, 1995, U.S. District Court Judge H.F. Garcia entered the judgment in the criminal case, which imposed a special assessment of $50 on each of two counts and a fine of $1,000 on each count and sentenced intervenor to 28 months of imprisonment in the custody of the U.S. Bureau of Prisons. He was released from prison in 1997, at which time he rejoined his wife and children. Sometime thereafter he began working as an auditor for the Texas Workforce Commission.

On June 4, 1998, this Court entered a decision in the case of Bishop v. Commissioner, docket No. 9641-97, that for 1992 and 1993 income tax deficiencies of $2,809 and $3,834 and section 6662(a) penalties of $562 and $626, respectively, were due from him. He has paid the assessed deficiencies, penalties, and interest in part.

Before and after 2000, petitioner and intervenor began living beyond their means, purchasing a new home, furniture, and automobiles and incurring substantial expenses and debts. Intervenor was a domineering person who controlled their financial matters and prepared their Federal income tax returns. During the years at issue he advised petitioner to decrease her tax withholding by increasing her exemptions. He also decreased

his own tax withholding. Those actions resulted in the underpayments of tax for the years 2000 through 2002 and the failure to make any payments on the unpaid tax liabilities after they were assessed.

Petitioner did not sign the joint Federal income tax returns for 2000 and 2001. Intervenor did not disclose or discuss with petitioner the contents of those returns. However, petitioner gave her Forms W-2, Wage and Tax Statement, to intervenor for those years, and they were attached to the returns. Intervenor did not file the return for either year until June 4, 2002. It was not until late 2002 or early 2003 that petitioner became aware that intervenor had made no payments on the unpaid taxes for 2000 and 2001 of $2,532 and $4,685, respectively.

Petitioner did sign the joint Federal income tax return for 2002, which reported wages for intervenor and her. No Forms W-2 were attached to the return. The total underpayment of tax for that year is $6,105.

Petitioner subsequently corrected her withholding and entered into an installment agreement with the IRS to pay the balance of her tax due for 2003. It appears that she is presently current in paying her Federal income tax.

During 2007, in a final review and reversal of respondent's initial determination, Appeals Officer Handrick of the Austin Office concluded that petitioner should be granted full equitable

relief under section 6015(f) for 2000, 2001, and 2002.  His

explanation and analysis contained in an Appeals case memorandum,

and approved by the Appeals team manager, states, in part, as

follows:

> It appears that the Government will be able to show
> that the petitioner had reason to know that Mr. Bishop
> was not going to pay the unpaid tax liabilities.
> Therefore, it does not appear that the petitioner
> qualifies under the first opportunity.
>
> The following are factors that may be relevant to
> whether the Service will grant equitable relief under
> the second opportunity.
>
> (i) <u>Marital status</u>.  Whether the requesting spouse is
> separated (whether legally separated or living apart)
> or divorced from the non-requesting spouse.  A
> temporary absence, such as an absence due to
> incarceration, illness, business, vacation, military
> service, or education, shall not be considered
> separation for purposes of this revenue procedure if it
> can be reasonably expected that the absent spouse will
> return to a household maintained in anticipation of his
> or her return.  See Treas. Reg. section 1.6015-
> 3(b)(3)(i) for the definition of a temporary absence.
> The petitioner is divorced.  The MAC has determined
> that this factor favors relief and I concur.
>
> (ii) <u>Economic hardship</u>.  Whether the requesting spouse
> would suffer economic hardship (within the meaning of
> section 4.02(1)(c) of this revenue procedure) if the
> Service does not grant relief from the income tax
> liability.  According to the petitioner her monthly
> income barely covers monthly expenses.  The petitioner
> is raising 2 children and is supposed to receive child
> support from Mr. Bishop but has not received anything
> since 2004.  In addition, it should be noted that when
> Mr. Bishop was in prison, the petitioner was
> responsible for supporting her two children and
> incurred a considerable amount of debt which she is
> currently paying off.  In fact the taxpayer was making
> monthly payments in accordance with a Chapter 13
> bankruptcy that was dismissed on September 12, 2003.
> The MAC has determined that the petitioner will not

incur an economic hardship if relief is not granted.  I disagree.  It appears that the petitioner will incur an economic hardship if relief is not granted.  Therefore, this factor does favor relief.

(iii) <u>Knowledge or reason to know</u>.

(A) <u>Underpayment cases</u>.  In the case of an income tax liability that was properly reported but not paid, whether the requesting spouse did not know and had no reason to know that the non-requesting spouse would not pay the income tax liability.  As previously stated, it appears that the taxpayer had reason to know that her ex-husband was not going to pay the liabilities in question.  Therefore, this factor weighs against relief.

(iv) <u>Non-requesting spouse's legal obligation</u>.  Whether the non-requesting spouse has a legal obligation to pay the outstanding income tax liability pursuant to a divorce decree or agreement.  This factor will not weigh in favor of relief if the requesting spouse knew or had reason to know, when entering into the divorce decree or agreement, that the non-requesting spouse would not pay the income tax liability.  The divorce decree appears to be silent with respect to the tax liabilities.  The MAC has determined that this factor weighs against relief.  I disagree.  Where the divorce decree is silent, this factor is a neutral factor.  See <u>Connie Washington v. Commissioner</u>, 120 T.C. 137. Therefore, this factor is neutral.

(v) <u>Significant benefit</u>.  Whether the requesting spouse received significant benefit (beyond normal support) from the unpaid income tax liability or item giving rise to the deficiency.  See Treas. Reg. section 1.6015-2(d).  Where there is no significant benefit, the Tax Court has ruled that this factor is neutral. See <u>Teresa J. Fox v. Commissioner</u>, T.C. Memo. 2006-22. The MAC has determined that this factor weighs against relief.  I disagree.  Since the petitioner received no significant benefit, this factor is neutral.

(vi) <u>Compliance with income tax laws</u>.  Whether the requesting spouse has made a good faith effort to comply with income tax laws in the taxable years following the taxable year or years to which the request for relief relates.  Tax compliance is a factor

that the Commissioner will consider only against granting relief. <u>Ewing v. Commissioner</u>, 122 T.C. 32. The MAC has determined that this factor weighs in favor of relief. I disagree. Based upon the <u>Ewing</u> case, this factor is neutral.

Factors that, if present in a case, will weigh in favor of equitable relief, but will not weigh against equitable relief if not present in a case, include, but are not limited to, the following:

<u>Abuse</u>. Whether the non-requesting spouse abused the requesting spouse. The presence of abuse is a factor favoring relief. A history of abuse by the non-requesting spouse may mitigate a requesting spouse's knowledge or reason to know. The MAC has determined that there was no physical abuse. However, abuse is not limited to physical abuse.

There can also be verbal and mental abuse. According to the petitioner, when she asked Mr. Bishop why there wasn't much income tax being withheld from her weekly pay, he told her not to worry and trust him because he worked for the IRS. When she persisted, Mr. Bishop yelled at her and threatened her. The petitioner also discovered that Mr. Bishop was accessing her bank account to pay pornography sites.

When she confronted him about that, Mr. Bishop became very agitated and began yelling at her. In addition, the taxpayer feared that Mr. Bishop would retaliate against their children. It wasn't until the petitioner discovered that Mr. Bishop was having an affair that she decided to file for a divorce. Therefore, it appears that this factor does favor relief.

\*       \*       \*       \*       \*       \*       \*

In summation, it appears that three factors favor relief, one weighs against relief and the rest are neutral. Therefore, since the factors in favor of relief outweigh the one factor against, the petitioner is entitled to innocent spouse relief in accordance with I.R.C. section 6015(f).

Respondent's counsel agrees with Appeals Officer Handrick's analysis and concedes that petitioner is entitled to full equitable relief under section 6015(f).

Petitioner's present income, reasonable living expenses, and substantial debt create an economic hardship that would make it exceedingly difficult and burdensome for her to pay the unpaid income tax liabilities for 2000, 2001, and 2002.

While petitioner was not physically abused by intervenor, she was mentally and emotionally abused by his rage and threats. When petitioner was moving out of the family home during their separation, intervenor's threats caused such havoc that she requested police protection and filed a report regarding his conduct toward her. Their children were concerned and upset about intervenor's temperamental outbursts and verbal harassment of their mother.

Intervenor has made no efforts to pay the assessed income tax liabilities for 2000, 2001, and 2002.

### Discussion

A predicate to relief under section 6015 is that a joint income tax return was filed. Sec. 6015(a)(1), (b)(1)(A). Thus, if the Court should find that petitioner did not file joint returns for 2000 and 2001, we would be required to deny her claim for section 6015 relief for those years. Raymond v. Commissioner, 119 T.C. 191, 194-197 (2002).

Married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). Generally, a joint return must be signed by both spouses. Sec. 1.6013-1(a)(2), Income Tax Regs. However, where both spouses intend to file a joint return, the failure of one spouse to sign the return will not preclude its treatment as a joint return. Estate of Campbell v. Commissioner, 56 T.C. 1, 12 (1971). Petitioner and intervenor agree that they intended to file joint returns for 2000 and 2001, and respondent has not challenged their right to do so. See Acquaviva v. Commissioner, T.C. Memo. 1996-542.

In general, spouses who file a joint Federal income tax return are jointly and severally liable for the full amount of the tax liability shown or required to be shown on the return. Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000). However, a spouse may seek relief from joint and several liability under section 6015 if certain requirements are met.

Petitioner seeks equitable relief under section 6015(f). Section 6015(f) provides:

> SEC. 6015(f). Equitable Relief.--Under procedures prescribed by the Secretary, if--
>
> > (1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and
> >
> > (2) relief is not available to such individual under subsection (b) or (c),
>
> the Secretary may relieve such individual of such liability.

Because petitioner seeks relief from underpayments of tax rather than understatements of tax, relief is not available to her under section 6015(b) and (c).  See Washington v. Commissioner, 120 T.C. 137, 145-147 (2003).

On December 20, 2006, Congress amended section 6015(e)(1) to provide that this Court has jurisdiction over stand-alone section 6015(f) cases.[2]  Tax Relief and Health Care Act of 2006, Pub. L. 109-432, div. C, sec. 408(a), (c), 120 Stat. 3061, 3062.[3] Respondent concedes that we have jurisdiction over this case under section 6015(e) as amended.

---

[2]Tax Relief and Health Care Act of 2006, Pub. L. 109-432, div. C, sec. 408(c), 102 Stat. 3062, provides that "The amendments made by * * * [sec. 408] shall apply with respect to liability for taxes arising or remaining unpaid on or after [Dec. 20, 2006]."

[3]Sec. 6015(e) now provides:

SEC. 6015(e).  Petition for Review by Tax Court.--

(1)  In general.--In the case of an individual against whom a deficiency has been asserted and who elects to have subsection (b) or (c) apply, or in the case of an individual who requests equitable relief under subsection (f)--

(A)  In general.-- * * * the individual may petition the Tax Court (and the Tax Court shall have jurisdiction) to determine the appropriate relief available to the individual under this section * * *   [Emphasis added.]

The Commissioner uses guidelines prescribed in Rev. Proc. 2003-61, 2003-2 C.B. 296, to determine whether a taxpayer qualifies for relief from joint and several liability under section 6015(f).[4]

A.   Rev. Proc. 2003-61, Sec. 4.01

Before the Commissioner will consider a taxpayer's request for relief under section 6015(f), the taxpayer must satisfy the seven threshold conditions listed in Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297.   The parties agree that petitioner satisfies each of the conditions.

B.   Rev. Proc. 2003-61, Sec. 4.02

1.   In General

Rev. Proc. 2003-61, sec. 4.02(1), 2003-2 C.B. at 298, provides that equitable relief will ordinarily be granted as to unpaid liabilities if, in addition to the seven threshold conditions, each of the following elements is satisfied:

> (a) On the date of the request for relief, the requesting spouse is no longer married to, or is legally separated from, the nonrequesting spouse, or has not been a member of the same household as the nonrequesting spouse at any time during the 12-month period ending on the date of the request for relief.

---

[4]Rev. Proc. 2003-61, 2003-2 C.B. 296, supersedes Rev. Proc. 2000-15, 2000-1 C.B. 447, effective for requests for relief filed on or after Nov. 1, 2003, and for requests for relief pending on Nov. 1, 2003, for which no preliminary determination letter has been issued as of that date. Rev. Proc. 2003-61, secs. 6 and 7, 2003-2 C.B. at 299.  Petitioner's request for relief was filed on May 20, 2005.

(b) On the date the requesting spouse signed the joint return, the requesting spouse had no knowledge or reason to know that the nonrequesting spouse would not pay the income tax liability.  The requesting spouse must establish that it was reasonable for the requesting spouse to believe that the nonrequesting spouse would pay the reported income tax liability. * * *

(c) The requesting spouse will suffer economic hardship if the Service does not grant relief. * * *

Petitioner and intervenor were divorced at the time petitioner filed her request for relief.  Respondent has determined that petitioner will suffer economic hardship if relief is not granted, and we agree.  Thus, the dispute is whether petitioner had knowledge or reason to know that intervenor would not pay the reported tax liabilities for 2000, 2001, and 2002.

2.    Knowledge or Reason To Know

This element is satisfied if the requesting spouse did not know or have reason to know when she signed the return that the taxes would not be paid.  Rev. Proc. 2003-61, sec. 4.02(1)(b). Accordingly, petitioner must establish that it was reasonable for her to believe that intervenor would pay the reported tax liabilities.

Although petitioner may not have been aware of the tax liabilities intervenor reported on the 2000 and 2001 returns because the returns were not signed by or discussed with her and she did not actually know that there were unpaid taxes until at

least late 2002 or early 2003, we think petitioner should have had reason to believe that those tax liabilities might exist because of their mounting debts and severe financial situation. Of course, petitioner knew there were unpaid taxes due for 2002 because she signed the return for that year and confronted intervenor about the unpaid taxes due for that year as well as for the 2 prior years. Furthermore, she knew about the tax liabilities when she joined intervenor as a party in a chapter 13 bankruptcy proceeding in February 2003. Therefore, we conclude that petitioner did not satisfy the knowledge or reason to know element of Rev. Proc. 2003-61, sec. 4.02, and thus does not qualify for equitable relief under that section of the revenue procedure.

C. <u>Rev. Proc. 2003-61, Sec. 4.03</u>

Where the requesting spouse fails to qualify for relief under Rev. Proc. 2003-61, sec. 4.02, the Commissioner may nonetheless grant relief under Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298-299. Rev. Proc. 2003-61, sec. 4.03, provides that where the seven threshold conditions have been satisfied and the requesting spouse does not qualify for relief under Rev. Proc. 2003-61, sec. 4.02, equitable relief may be granted under section 6015(f) if, taking into account all facts and circumstances, it is inequitable to hold the requesting spouse

liable.  Rev. Proc. 2003-61, sec. 4.03, lists factors that the Commissioner will take into account in determining, on the facts and circumstances, whether to grant full or partial equitable relief under section 6015(f).  As Rev. Proc. 2003-61, sec. 4.03, makes clear, no single factor is determinative in any particular case, all factors are to be considered and weighed appropriately, and the list of factors is not intended to be exclusive.

Rev. Proc. 2003-61, sec. 4.03(2)(a), 2003-2 C.B. at 298-299, lists the following factors that the Commissioner will weigh in determining whether to grant equitable relief:

(i) <u>Marital status</u>.  Whether the requesting spouse is separated * * * or divorced from the nonrequesting spouse.  * * *

(ii) <u>Economic hardship</u>.  Whether the requesting spouse would suffer economic hardship (within the meaning of section 4.02(1)(c) of this revenue procedure) if the Service does not grant relief from the income tax liability.

(iii) <u>Knowledge or reason to know</u>.

(A) <u>Underpayment cases</u>.  * * * whether the requesting spouse did not know and had no reason to know that the nonrequesting spouse would not pay the income tax liability.

*        *        *        *        *        *        *

(iv) <u>Nonrequesting spouse's legal obligation</u>. Whether the nonrequesting spouse has a legal obligation to pay the outstanding income tax liability pursuant to a divorce decree or agreement.  * * *

(v) <u>Significant benefit</u>.  Whether the requesting spouse received significant benefit (beyond normal support) from the unpaid income tax liability * * *

(vi) <u>Compliance with income tax laws</u>. Whether the requesting spouse has made a good faith effort to comply with income tax laws in the taxable years following the taxable year or years to which the request for relief relates.

Rev. Proc. 2003-61, sec. 4.03(2)(b), 2003-2 C.B. at 299, lists two positive factors that the Commissioner will weigh in favor of granting equitable relief. They are:

(i) <u>Abuse</u>. Whether the nonrequesting spouse abused the requesting spouse. * * *

(ii) <u>Mental or physical health</u>. Whether the requesting spouse was in poor mental or physical health on the date the requesting spouse signed the return or at the time the requesting spouse requested relief. * * *

Before we consider and apply the above factors, we will comment on the testimonial credibility of the two key witnesses, petitioner and intervenor. In many respects their testimony is critical to our disposition of the issue involved herein. Their testimony boils down essentially to a "she said/he said" situation.

In <u>Kropp v. Commissioner</u>, T.C. Memo. 2000-148, we stated that "As a trier of fact, it is our duty to listen to the testimony, observe the demeanor of the witnesses, weigh the evidence, and determine what we believe." In <u>Diaz v. Commissioner</u>, 58 T.C. 560, 564 (1972), we observed similarly that the process of distilling truth from the testimony of witnesses, whose demeanor we observe and whose credibility we evaluate, is the daily grist of judicial life. We are not required to accept

testimony if it is improbable, unreasonable, or questionable. MacGuire v. Commissioner, 450 F.2d 1239, 1244-1245 (5th Cir. 1971), affg. T.C. Memo. 1970-89.

We find that petitioner's testimony was credible in material respects. By contrast, we find that intervenor's testimony was not credible. Having observed intervenor and evaluated his demeanor as a witness, we reject certain aspects of his testimony, not merely because we sometimes found it inconsistent, vague, evasive, or misleading, but because we simply do not believe it.

We turn now to weighing the factors in considering whether petitioner qualifies for equitable relief under Rev. Proc. 2003-61, sec. 4.03.

### 1. Marital Status

Petitioner and intervenor separated in 2003 and divorced in 2004. This factor weighs in favor of granting relief.

### 2. Economic Hardship

As previously found and for the reasons stated, we conclude that petitioner has established to our satisfaction that she will suffer economic hardship if she is not granted equitable relief. This factor weighs in favor of granting relief.

### 3. Knowledge or Reason To Know

For the reasons stated in our analysis of this factor under Rev. Proc. 2003-61, sec. 4.02, we conclude that petitioner has

failed to establish that she did not have reason to know that intervenor would not pay the income tax liabilities for the years at issue. This factor weighs against granting relief.

### 4. Nonrequesting Spouse's Legal Obligation

The divorce decree did not contain a provision as to which spouse had a legal obligation to pay the outstanding income tax liabilities for 2000, 2001, and 2002. This factor is neutral.

### 5. Significant Benefit

Petitioner did not receive significant benefit beyond normal support from the unpaid income tax liabilities. This factor is neutral.

### 6. Compliance With Income Tax Laws

Tax compliance is a factor considered by the Commissioner only against granting relief. Respondent does not contend that petitioner did not make a good faith effort to comply with her Federal income tax obligations in years subsequent to 2002. And respondent does not contend that this factor applies. Consequently, this factor is neutral.

### 7. Abuse

As previously indicated, while petitioner was not physically abused by intervenor, respondent determined, and we agree, that there was mental and emotional abuse sufficient to support relief. Thus, this factor weighs in favor of granting relief.

## Conclusion

There are three factors that favor granting equitable relief, one that weighs against granting it, and the remainder that are neutral.  Accordingly, after considering all the facts and circumstances, we conclude that it would be inequitable to hold petitioner liable for the underpayments of tax for 2000, 2001, and 2002.  Therefore, petitioner is entitled to relief under section 6015(f).

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for petitioner</u>.