T.C. Memo. 2009-26

UNITED STATES TAX COURT

DIANE S. HARRIS, Petitioner,
AND CHARLES M. HARRIS, Intervenor <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26684-06.                    Filed February 5, 2009.

Diane S. Harris, pro se.

Charles M. Harris, pro se.

<u>Jeanne Gramling</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WELLS, <u>Judge</u>:  This case arises from a request for relief
pursuant to section 6015(f)[1] with respect to petitioner's joint

_____

[1]All section references are to the Internal Revenue Code in
effect at all relevant times.  All Rule references are to the Tax
                                              (continued...)

income tax liabilities for 2000 and 2003. Respondent determined that petitioner was not entitled to relief from joint and several liability under section 6015(f). Petitioner timely filed a petition with the Court. The issue for decision is whether petitioner is entitled to equitable relief under section 6015(f).

FINDINGS OF FACT

Some of the facts and certain exhibits have been stipulated. The stipulation of facts received into evidence is incorporated herein by reference, and those facts are so found. At the time the petition was filed, petitioner resided in North Carolina. Petitioner's former husband, Charles M. Harris (Mr. Harris), intervened in this action pursuant to Rule 325(b). At the time Mr. Harris filed his notice of intervention, he resided in North Carolina.

Petitioner and Mr. Harris, both college graduates, were married in June 1981 and lived together until their separation during February 2005. Their divorce was finalized in June 2006. They have five children. Mr. Harris has custody of the minor children.

During 2000 and 2003 petitioner worked for Scott Medical Group as an office manager, and Mr. Harris worked from

---

[1](...continued)
Court Rules of Practice and Procedure.

home as a self-employed insurance salesman.  Petitioner was not involved in any way with Mr. Harris's insurance business.

Petitioner and Mr. Harris filed for bankruptcy twice, once during 1985 and once during 2004.  During 2002 they refinanced their home to pay existing Federal income tax liabilities. During February 2005 their home was sold in a foreclosure sale.

On October 17, 2001, petitioner and Mr. Harris signed and filed a joint Federal income tax return for tax year 2000 (2000 joint return),[2] reflecting an unpaid income tax liability of $7,172.  On August 18, 2004, petitioner and Mr. Harris filed a joint Federal income tax return for tax year 2003 (2003 joint return),[3] reflecting an unpaid income tax liability of $5,518. Petitioner and Mr. Harris did not remit payment with their 2000 and 2003 joint returns.

---

[2]The 2000 joint return was prepared by Thomas, Judy & Tucker, a C.P.A. firm.

[3]The 2003 joint return was prepared by Mr. Harris, using computer software.  Petitioner did not sign the 2003 joint return, which necessarily implicates issues regarding whether she filed a joint return and whether she is entitled to relief under sec. 6015(f).  Raymond v. Commissioner, 119 T.C. 191 (2002); see sec. 1.6015-4(a), Income Tax Regs. (the filing of a joint return is a prerequisite to sec. 6015 relief).
The Court finds that petitioner intended to and did file a joint return with Mr. Harris.  She has not renounced the 2003 joint return and she provided her Forms W-2, Wage and Tax Statement, and canceled checks to Mr. Harris.  See Ziegler v. Commissioner, T.C. Memo. 2003-282 (the Court assumed that the taxpayer conceded the filing of a joint return or ratified the joint return that the nonrequesting spouse filed where she continued to assert her entitlement to sec. 6015(f) relief).

On March 8, 2006, petitioner timely filed Form 8857, Request for Innocent Spouse Relief (request for relief). On April 19, 2006, petitioner submitted a Form 12510, Questionnaire for Requesting Spouse (questionnaire). Petitioner stated on her questionnaire that she always filed joint returns while married to Mr. Harris, and that she provided Mr. Harris with her Forms W-2 and canceled checks from her individual checking account for the years in issue. Petitioner also reported on her questionnaire monthly income of $1,650 and monthly expenses of $2,095.

On May 12, 2006, respondent issued his preliminary determinations on petitioner's request for relief. Respondent denied the request for relief on the grounds that petitioner knew or had reason to know that the tax would not be paid at the time the 2000 and 2003 joint returns were filed. Respondent also determined that there was no documentation of marital abuse, no claim of poor mental or physical health, and no additional legal obligation for Mr. Harris to pay the tax.[4]

---

[4]The divorce decree did not impose any obligation on petitioner or Mr. Harris to pay any outstanding Federal income or other tax liabilities. Nor is there any other document relating to that divorce, such as a property settlement, that imposed any legal obligation on petitioner or Mr. Harris to pay any such liabilities.

Petitioner disagreed with respondent's preliminary determination, and she requested that her case be forwarded to the Office of Appeals for reconsideration. On July 31, 2006, Appeals Officer Jean S. Palmer (Appeals Officer Palmer) sent the following preliminary determination to petitioner:

> As part of my preliminary analysis of your case, I've listed factors I believe have a bearing on whether or not you are entitled to relief. These factors and my evaluation of each are listed below.
>
> **1. Is the tax you are requesting relief from attributable to your former spouse?**
> Part of the income is attributable to Mr. Harris. To the extent the income is attributable to him, this factor is in your favor.
>
> **2. Did you know or have reason to know that the tax would not be paid at the time you signed the returns? Did you reasonably believe that the tax would be paid by your former spouse? . . . .**
> In reviewing your history, I find you and Mr. Harris did not full[sic] pay your 1995, 1996, 1997 or 1998 tax returns. Based on this, I do not believe you reasonably believed the taxes would be paid. . . This factor is not in your favor.
>
> **3. Will you suffer a financial/economic hardship if relief is not granted?**
> Based on the information in the administrative file and third party reporting documents, I do not believe you would suffer an economic hardship. The income of all parties in your home must be included. Additionally your expenses are out of line with allowable expenses. This factor is not in your favor.
>
> **4. Have you made a good faith effort to comply with federal income tax laws in the subsequent years?**
> I find you have filed timely in subsequent years. This factor is in your favor.

Based on the information provided to date, I am
unable to recommend relief of the joint tax
liabilities. However, before I make a final
determination, I'd like to consider any additional
information you may want considered.

If you have any additional information you'd like
me to consider, please mail it to me at the
address shown above.

\*          \*          \*          \*          \*

If I don't hear from you by 14 Aug 2006, I will
issue a final determination letter on the basis
of the information presented in the administrative
file.

Petitioner provided no further information to substantiate her expenses relating to her shared living arrangement. On September 21, 2006, Appeals Officer Palmer issued to petitioner a final determination letter sustaining her preliminary determinations. On December 26, 2006, petitioner timely filed a petition with the Court.[5]

At the time of trial, petitioner had two jobs. She worked full time for Digestive Health Care, earning $11 an hour, and part time for Kmart, earning $8 an hour. Her monthly net income totaled $1,700.

As of June 25, 2007, the unpaid balances due for tax years 2000 and 2003 were $12,406.99 and $7,887.28, respectively.

---

[5]By order of the Court, petitioner filed an amended petition on Feb. 12, 2007. Petitioner had not paid the required filing fee, and the document she submitted did not comply with the Rules of the Court as to the form and content of a proper petition.

OPINION

I.   Joint and Several Liability and Section 6015 Relief

Section 6013(d)(3) provides that if a joint return is filed, the tax is computed on the taxpayers' aggregate income, and liability for the resulting tax is joint and several.  See also sec. 1.6013-4(b), Income Tax Regs.  However, pursuant to section 6015, a taxpayer may be relieved from joint and several liability in certain circumstances.

Petitioner may be relieved from joint and several liability pursuant to section 6015(f) if, taking into account all the facts and circumstances, it would be inequitable to hold her liable for any unpaid tax or deficiency and she does not qualify for relief under section 6015(b) or (c).

Relief pursuant to section 6015(b) or (c) is premised on the existence of a deficiency or an understatement of tax.  Sec. 6015(b)(1)(B), (c)(1); Block v. Commissioner, 120 T.C. 62, 65-66 (2003).  The instant case involves an underpayment of a properly reported liability.  Therefore, relief under section 6015(b) and (c) is not available to petitioner.

The Commissioner has issued revenue procedures listing the factors to be considered in considering relief under section 6015(f).  Rev. Proc. 2003-61, 2003-2 C.B. 296, modifying and

superseding Rev. Proc. 2000-15, 2000-1 C.B. 447.[6]  We have applied those factors in considering whether relief is warranted under section 6015(f).  See Beatty v. Commissioner, T.C. Memo. 2007-167.  In the instant case, we considered all of the relevant facts and circumstances including all factors argued by the parties.  See sec. 6015(f).

Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297, sets forth seven threshold conditions that individuals seeking relief under section 6015(f) must satisfy.  Respondent concedes that petitioner satisfies each of the seven threshold conditions.

Additionally, Rev. Proc. 2003-61, sec. 4.02, 2003-2 C.B. at 298, sets forth circumstances in which relief will ordinarily be granted under section 6015(f) with respect to an underpayment of a properly reported liability.  To qualify for relief under Rev. Proc. 2003-61, sec. 4.02(1), 2003-2 C.B. at 298, the spouse seeking relief must:  (1) No longer be married to, be legally separated from, or not have been a member of the same household of the other spouse at any time during the 12-month period ending on the date of the request for relief; (2) have had no knowledge or reason to know when the spouse seeking relief signed the

---

[6]The guidelines set forth in Rev. Proc. 2003-61, 2003-2 C.B. 296, are effective for requests for relief filed, as in the instant case, on or after Nov. 1, 2003.  Id., sec. 7, 2003-2 C.B. at 299.

returns that the other spouse would not pay the tax liability; and (3) suffer economic hardship if relief is not granted.

Respondent concedes that petitioner and Mr. Harris were living apart during the 12-month period ending on the date of petitioner's request for relief. The parties dispute only whether petitioner had knowledge or reason to know that Mr. Harris would not pay the reported tax liability and whether petitioner would suffer economic hardship if relief were not granted.

As to the knowledge factor, respondent contends that petitioner knew or should have known that Mr. Harris would not pay the reported liabilities in issue. Petitioner maintains that she first learned of the unpaid tax liabilities in February 2005, when respondent mailed notices of Federal tax liens for the years 2000 and 2003.[7] Mr. Harris maintains that he had prior conversations with petitioner concerning the unpaid liabilities.

Petitioner and Mr. Harris have a lengthy history of failing to pay their reported Federal income tax liabilities. For instance, overpayments due upon the filing of their 1999, 2001, and 2002 joint returns were transferred to unpaid tax balances for tax years 1995 through 1997. Moreover, in 2002 petitioner

---

[7]Petitioner claims that Mr. Harris opened most of the mail. As a consequence, petitioner maintains, she was "not aware of any notices or warnings that may have been delivered" to their residence before their separation.

and Mr. Harris refinanced their home in order to pay their Federal income tax obligations. Additionally, they filed for bankruptcy in 1984 and 2004, and shortly after their separation, they lost their home in a bank foreclosure sale.

Under the foregoing facts and circumstances, we conclude that petitioner should have known that Mr. Harris would not pay the liabilities reported on their 2000 and 2003 joint returns. Consequently, we conclude that petitioner does not qualify under the knowledge factor and do not address the third element in the context of Rev. Proc. 2003-61, sec. 4.02.

Where, as here, petitioner failed to qualify under Rev. Proc. 2003-61, sec. 4.02, relief may be granted under Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298. A nonexhaustive list of factors to be considered when determining whether to grant equitable relief under section 6015(f) is contained in Rev. Proc. 2003-61, sec. 4.03. Those factors are: (1) Marital status; (2) economic hardship; (3) whether the spouse seeking relief knew or had reason to know that the other spouse would not pay the income tax liability; (4) the other spouse's legal obligation to pay the tax liability; (5) whether the spouse seeking relief obtained a significant benefit from the nonpayment of the tax liability; and (6) whether the spouse seeking relief complied with Federal income tax laws. We address below the application of the

foregoing factors to the facts and circumstances of the instant case.

II.  Marital Status

Under Rev. Proc. 2003-61, sec. 4.03(2)(a)(i), 2003-2 C.B. at 298, consideration is given to whether the spouse seeking relief is separated or divorced from his or her spouse.  Petitioner and Mr. Harris were separated during February 2005, petitioner filed her claim for relief during March 2006, and they were divorced in June 2006.  The marital status factor favors relief.

III. Economic Hardship

Generally, economic hardship exists if collection of the tax liability will cause the spouse seeking relief to be unable to pay his or her reasonable basic living expenses.  Butner v. Commissioner, T.C. Memo. 2007-136.  The following nonexclusive factors to be considered in determining whether the spouse seeking relief can pay reasonable basic living expenses are set forth in section 301.6343-1(b)(4), Proced. and Admin. Regs.:  (1) The age, employment status and history, ability to earn, and number of dependents of the spouse seeking relief; (2) an amount reasonably necessary for food, clothing, housing, medical expenses, transportation, current tax payments, and expenses necessary to the production of income for the spouse seeking relief; (3) the cost of living in the geographic area of the spouse seeking relief; (4) the amount of property available to

satisfy the expenses of the spouse seeking relief; (5) any extraordinary circumstances; e.g., special education expenses, a medical catastrophe, or a natural disaster; and (6) any other factor bearing on economic hardship.

Petitioner claims that she will be unable to pay reasonable, basic living expenses if relief is not granted. While we are sympathetic to petitioner's plea, we conclude that petitioner has not met her burden of proving economic hardship. Petitioner did not offer any information substantiating her reported living expenses, and her testimony concerning her shared living arrangement with John Mitchell was evasive and inconsistent with her testimony regarding her financial responsibilities. The lack of substantiation is particularly noteworthy in the light of petitioner's assertion that her expenses exceeded her income.

Petitioner has failed to show that she would suffer economic hardship, as that term is defined in section 301.6343-1(b)(4)(i), Proced. & Admin. Regs., if she were required to pay the joint tax liabilities. Accordingly, the economic hardship factor weighs against relief.

IV. <u>Knowledge or Reason To Know</u>

Under Rev. Proc. 2003-61, sec. 4.03(2)(a)(iii)(A), 2003-2 C.B. at 298, consideration is given to whether the spouse seeking relief knew or had reason to know that the other spouse would not pay the liability. In the case of a properly reported but unpaid

liability, the relevant knowledge is whether the spouse seeking relief knew or had reason to know when the returns were signed that the tax would not be paid.  See <u>Washington v. Commissioner</u>, 120 T.C. 137, 151 (2003).  The Court has found <u>supra</u> in respondent's favor on the knowledge factor.  Therefore, the knowledge factor weighs against relief.  See <u>Beatty v. Commissioner</u>, T.C. Memo. 2007-167 (applying Rev. Proc. 2003-61, <u>supra</u>, and finding that knowledge or reason to know weighed against relief); see also <u>Fox v. Commissioner</u>, T.C. Memo. 2006-22.

V.   <u>Legal Obligation of Other Spouse</u>

Under Rev. Proc. 2003-61, sec. 4.03(2)(a)(iv), 2003-2 C.B. at 298, consideration is given to whether the other spouse has a legal obligation to pay the outstanding income tax liability pursuant to a divorce decree or an agreement.  The legal obligation factor would weigh in favor of petitioner if Mr. Harris were under such an obligation.  However, there was no agreement imposing a legal obligation on Mr. Harris to pay the outstanding income tax liabilities.  Accordingly, the legal obligation factor is neutral.  See <u>Washington v. Commissioner</u>, <u>supra</u> at 148-149.

VI.  <u>Significant Benefit</u>

Under Rev. Proc. 2003-61, sec. 4.03(a)(v), 2003-2 C.B. at 299, consideration is given to whether the spouse seeking relief

significantly benefited (beyond normal support) from the unpaid income tax liability.  If so, the significant benefit factor weighs against granting equitable relief.  The facts and circumstances in the instant case show, and respondent concedes, that petitioner did not receive any significant benefit, beyond normal support, from the failure to pay the tax.  Accordingly, the significant benefit factor weighs in favor of relief.

VII. Petitioner's Compliance With Federal Income Tax Laws

Under Rev. Proc. 2003-61, sec. 4.03(a)(vi), 2003-2 C.B. at 299, consideration is given as to whether the spouse seeking relief is in compliance with her income tax obligations. Respondent concedes that petitioner is in compliance with those obligations.  The Federal income tax law compliance factor favors relief.  See Chou v. Commissioner, T.C. Memo. 2007-102.

Additionally, Rev. Proc. 2003-61, sec. 4.03(2)(b), 2003-2 C.B. at 299, lists two positive factors to consider:  (1) Whether the spouse seeking relief was abused by the other spouse; and (2) whether the spouse seeking relief was in poor mental or physical health when signing the returns or requesting relief.

As to the abuse factor, Mr. Harris did not abuse petitioner. Accordingly, the abuse factor does not weigh in petitioner's favor.

As to the physical health factor, at trial petitioner admitted to abusing alcohol following her separation from Mr. Harris.  Indeed, petitioner's problems with alcohol were sufficiently serious to require treatment.  The physical health factor favors relief.

In sum, on the basis of our examination of the entire record before us, there are factors in favor of relief and against relief.  Considering our discussion above of the knowledge factor and the economic hardship factor, we are not persuaded that petitioner has carried her burden of proof to show that she is entitled to relief under section 6015(f) with respect to the tax liabilities for 2000 and 2003.

We have considered all of the contentions and arguments of the parties that are not discussed herein, and we conclude that they are without merit, irrelevant, or moot.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.